Betty W. Crissey, et al.[1] v. Commissioner.
Crissey v. Commissioner
Docket Nos. 81774, 81775, 84450-84452, 86060-86063. emo. 1961-189.
United States Tax Court
T.C. Memo 1961-189; 1961 Tax Ct. Memo LEXIS 160; 20 T.C.M. (CCH) 947; T.C.M. (RIA) 61189; June 27, 1961
Hugh O. Mussina, Esq., 6338 Town Hill Land, Dallas, Tex., for the petitioners in Docket Nos. 81774 and 81775. Emil Corenbleth, Tex., for the petitioners in Docket Nos. 84450-84452 and 86060-86063. Harold D. Rogers, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: Docket
No.
Petitioner
Year
Deficiency
81774
Betty W. Crissey
1955
$ 284.76
81775
Edgar R. Crissey
1955
284.76
84450
William M. and
Frances F. Thy-
fault
1955
1,264.42
1956
876.31
1957
1,144.93
86060
William M. and
Frances F. Thy-
fault
1/1/58
$ 490.44
through
3/31/58
84451
James J. and Anne
Beebe
1955
1,382.54
1956
966.06
1957
958.82
86062
James J. Beebe
1958
927.35
86063
Anne K. Beebe
1958
927.35
84452
Carl S. and Lois H.
Potter
1956
437.28
1957
354.99
86061
Carl S. and Lois H.
Potter
1958
935.30
*161 The respondent at the trial took the position that either the deficiencies determined against Betty W. Crissey and Edgar R. Crissey (Docket Nos. 81774 and 81775) should be sustained or that the deficiencies determined against the Thyfaults, Beebes, and Potters (Docket Nos. 84450, 84451, 84452, 86060, 86061, 86062, and 86063) should be sustained, but not both. On brief, however, the respondent concedes that there are no deficiencies against Betty W. Crissey and Edgar R. Crissey (Docket Nos. 81774 and 81775). The sole issue presented for our decision is the correctness of the respondent's action in determining that petitioners Thyfault, Beebe, and Potter did not acquire a severable and amortizable covenant not to compete at the time they purchased the Roby L. Nichols Agency in September 1953. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Betty W. Crissey and Edgar R. Crissey are husband and wife residing at 3320 Villanova, Dallas, Texas. They filed separate income tax returns for 1955 with the director at Dallas. Petitioners William M. Thyfault and Frances F. Thyfault are husband and wife residing at 3609 McMillan Street, Dallas, *162 Texas. They filed their joint income tax returns for 1955, 1956, and 1957 and for the taxable year ended March 31, 1958, with the director at Dallas. Petitioners James J. Beebe and Anne K. Beebe are husband and wife residing at 6246 Marquita Avenue, Dallas, Texas. They filed joint income tax returns for 1955, 1956, and 1957 and separate income tax returns for 1958 with the director at Dallas. Petitioners Carl S. Potter and Lois H. Potter are husband and wife residing at 862 Berkinshire Drive, Dallas, Texas. They filed joint income tax returns for 1956, 1957, and 1958 with the director at Dallas. On March 16, 1950, Edgar R. Crissey purchased the Roby L. Nichols Agency from Roby L. Nichols for $50,000. Crissey obligated himself to continue the name of Roby L. Nichols Agency for a period of 5 years. Crissey acquired from Nichols the rights to renew certain fire and casualty insurance policies. These policies normally were written for periods of 1, 2, 3, and 5 years. One of the conditions of the sales agreement executed on March 16, 1950, by Nichols and Crissey was the covenant by Nichols not to compete by engaging in the fire and casualty insurance business in Dallas for a period *163 of 8 years. The Nichols Agency handled the sale of fire and casualty insurance only. Crissey operated the agency individually until April 1, 1951, when he formed a partnership with George B. Perfect. During August 1953, Crissey and Perfect began negotiations with William M. Thyfault and James J. Beebe concerning the sale to them of the Nichols Agency. Most of the negotiations were handled by Perfect and Thyfault with the approval of Beebe and Crissey. Thyfault and Beebe insisted on the inclusion in any sales contract of a covenant not to compete which would safeguard their renewal rights on existing policies. They would not have been interested in purchasing the Nichols Agency without such a covenant because otherwise the renewal rights would have been in jeopardy. A sales price of $60,000 was agreed upon by the parties. The price was determined by taking into consideration the furniture and fixtures, the name, and the 6-year covenant not to compete. The name Roby L. Nichols meant nothing to Thyfault and Beebe but they felt obligated to continue to use the name for the balance of the 5-year period to which Crissey had originally agreed. In order to acquire $10,000 as down payment *164 with which to purchase the Nichols Agency, Thyfault and Beebe consulted their banker, Willis M. Beavers, president of Merchants State Bank, with respect to the possibility of obtaining a loan. As a condition for granting a loan, Beavers insisted upon the proposed purchase of the Nichols Agency being approved by a certified public accountant, John J. Mimier. Mimier advised Thyfault and Beebe that any sales contract for the purchase of the Nichols Agency would need an allocation of the consideration involved so as to show specifically the cost of the business assets and of the covenant not to compete. His purpose in so advising them was to remove any uncertainty concerning the cost of the business properties and of the covenant. A sales contract transferring the Nichols Agency from Crissey and Perfect to Thyfault and Beebe was drafted and subsequently executed by all parties in the presence of Beavers at the Merchants State Bank. The contract was dated September 1, 1953, and contained a covenant not to compete, reading as follows: 5. Sellers agree that neither they nor their respective wives, will for a period of six years from September 1, 1953, reenter the fire and casualty business *165 as a recording or soliciting agent within Dallas County, Texas, and that they will not, directly or indirectly, conduct an insurance business as a recording or soliciting agent during such period. If either Sellers or the wife of either Seller shall default in the performance of this covenant, Purchasers shall be released from the payment of any sums due such defaulting party under this agreement. The sales agreement dated September 1, 1953, was not acceptable to the accountant, John Mimier, because it failed specifically to allocate the purchase price among the various business assets and the covenant not to compete. The parties then agreed that an additional paragraph would be added to the contract allocating the purchase price as follows: $5,000 to furniture and fixtures; $10 for the name of Roby L. Nichols; and the balance of $54,990 to the covenant not to compete. The contract thereafter was revised by the addition of the following paragraph: 10. It is agreed by and between Sellers and Purchasers that the purchase price set forth in the preceding Section 4 hereof in the aggregate amount of $60,000.00 is allocated in the manner following: $5,000.00 of said purchase price for *166 the furniture, fixtures and supplies described upon Exhibit "A"., $10.00 thereof for the use of the name "Roby L. Nichols Agency"; and the remainder of the purchase price for the covenant contained in the preceding Section 5 hereof wherein Sellers agree for themselves and their respective wives not to compete with Purchasers for the six year period therein provided. The revised contract was executed by all of the parties several days after the execution of the first contract. At the time of the sale of the Nichols Agency there were no profits from the business remaining because the renewals were running poorly. Thyfault, Beebe, and Carl Potter (who later joined the partnership) initially lost money in the operation of the Nichols Agency but operated at a profit the subsequent Beebe-Thyfault Agency. Amortization deductions were claimed annually during the years in issue by Thyfault, Beebe, and Potter, in the total amount of $9,165 per year, or one-sixth of the cost of the covenant not to compete. The covenant not to compete, contained in the sales contract executed by the parties in September 1953, was separately bargained for and dealt with, and was an asset severable from the *167 other assets of the business and had a value at the time of acquisition of $54,990. Opinion Petitioners contend that the agreement by Crissey and Perfect to refrain from engaging in the insurance business in Dallas for a period of 6 years was a contract separately bargained for in good faith, with a realistically determined and separately assigned value and that therefore they are entitled to amortize the consideration paid for this covenant not to compete over the life of the covenant under the principles enunciated in such decisions as Ullman v. Commissioner, 264 F. 2d 305, affirming 29 T.C. 129; Wilson Athletic G. Mfg. Co. v. Commissioner, 222 F. 2d 355; Aaron Michaels, 12 T.C. 17; and Commissioner v. Gazette Tel. Co., 209 F. 2d 926. Cf. Income Tax Regs., sec. 1.167(a)(3). The respondent on brief has taken the position that the covenant not to compete was never dealt with in good faith as a separate item during the negotiations conducted preliminary to the sale of the business in September 1953, and that the allocation in the revised contract of $54,990 to the covenant was merely "window *168 dressing" inserted solely to assist the purchasers to obtain a tax benefit by way of amortization deductions. A situation somewhat similar to that here involved arose in Frances Silberman, 22 T.C. 1240. There, the taxpayers were partners operating under the name of Tissue Products Company, a manufacturer of facial tissues. The taxpayers had purchased the interest of Harry Rothman, a previous partner in Tissue Products Company, under an agreement executed January 10, 1944, for $37,500. The book value of Rothman's interest in the partnership was $23,125. The excess in the amount of $14,375 was treated by the taxpayers as having been paid solely for Rothman's covenant not to compete by engaging in the business of manufacturing or selling paper tissues in the metropolitan New York area for a period of 3 years. In upholding the taxpayers' contention that they acquired an amortizable covenant for $14,375, we stressed the fact that the nature of the business was substantially one of personal service, that Rothman could readily have taken away a substantial amount of the taxpayers' sales by soliciting their customers, and that the taxpayers accordingly would have been foolhardy *169 not to have insisted on such a covenant. There was no evidence to indicate that the value of the assets exceeded the book value nor was there any suggestion of abnormal profits which would indicate any good will value. In prior transactions in which interests in the same business had been acquired or disposed of, no values had been attributed to good will. Rothman agreed under the contract of sale to return $12,000 to the taxpayers in the event that prior to May 31, 1946, he should violate the covenant not to compete. The name of the business was found to have no significant value. The Tissue Products Company had no brand name of its own and did not engage extensively in advertising. As in Frances Silberman, supra, the record here supports petitioners' contention that they in good faith negotiated for and acquired from Crissey and Perfect a covenant not to compete for a period of 6 years, and that the consideration allocated thereto is realistic and severable from the consideration paid for the other business assets. The parties here clearly dealt at arm's length in negotiation for and consummating the sale of the business in September 1953. The executed contract of *170 sale itself provides strong evidence of the intention of the parties. The contract not only contains a covenant on the part of Crissey and Perfect prohibiting them from engaging in the insurance business for 6 years but also provides a specific allocation of consideration to the covenant. Further, the contract provides for a forfeiture of consideration in the event of a breach of the covenant by the sellers. The importance of the contractual provisions and the weight to be given the written contract in situations such as this has been well expressed by the United States Court of Appeals for the Second Circuit in Ullman v. Commissioner, supra: when the parties to a transaction such as this one have specifically set out the covenants in the contract and have there given them an assigned value, strong proof must be adduced by them in order to overcome that declaration. The tax avoidance desires of the buyer and seller in such a situation are ordinarily antithetical, forcing them, in most cases, to agree upon a treatment which reflects the parties' true intent with reference to the covenants, and the true value of them in money. An insurance agency engaged in the business *171 of selling fire and casualty insurance is essentially a personal service business and the sellers here clearly were in a position subsequently to compete by contacting former customers. It is also apparent from the testimony here that Thyfault and Beebe considered the inclusion of a covenant not to compete to be of prime importance and would not have proceeded with the purchase of the business had such a covenant not been included. They feared competition and considered it to be of the highest importance to safeguard the renewal rights they wanted to acquire. Further, as in Frances Silberman, supra, there is no evidence that the other assets of the business were in fact worth more than the consideration allocated to them, nor is there any indication of abnormal profits which would suggest the existence of good will. Thyfault and Beebe lost money in the operation of the Roby L. Nichols Agency because the volume of premium renewals did not reach their expectations. In the prior transaction by which Crissey had purchased the Roby L. Nichols Agency in 1950, no value was attributed to good will. We therefore are unable to accept as realistic the respondent's characterization *172 of the facts, i.e., that the insertion of the covenant not to compete and the specific allocation thereto of consideration were not in good faith and were primarily taxmotivated. Mimier's reason for recommending the specific listing of the consideration allocable to the business assets and to the covenant not to compete was to remove any uncertainty as to the cost of the various properties and of the covenant. Perfect, one of the two selling partners, testified that he fully understood the tax consequences of the covenant not to compete and that at the time the agreement was executed, he expected to report his share of the profits from the sale of the covenant as ordinary income. He subsequently so reported such profits. For the foregoing reasons, we are of the opinion that the covenant not to compete here in issue was dealt with separately and in good faith and that the consideration assigned thereto was realistically determined. The petitioners Thyfault, Beebe, and Potter therefore are entitled to amortization deductions to the extent of the price paid for the acquisition of the covenant ($54,990) over its 6-year life. Decisions will be entered for the petitioners in Docket Nos. *173 81774 and 81775. Decisions will be entered under Rule 50 in Docket Nos. 84450, 84451, 84452, 86060, 86061, 86062, and 86063. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: EDGAR R. CRISSLEY, Docket No. 81775; WILLIAM M. THYFAULT and FRANCES F. THYFAULT, Docket Nos. 84450, 86060; JAMES J. BEEBE and ANNE BEEBE Docket No. 84451; CARLS S. POTTER and LOIS H. POTTER, Docket Nos. 84452, 86061; JAMES J. BEEBE, Docket No. 86062; and ANNE BEEBE, Docket No. 86063.↩